UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN ROBINSON                                    Case No. 14-12657

        Plaintiff,                            Sean F. Cox
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                 Michael Hluchaniuk
                                                 United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 14)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On July 7, 2014, plaintiff filed the instant suit seeking judicial review of the

Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Sean F. Cox

referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for benefits.  (Dkt. 2).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 13, 14).

    B.   Administrative Proceedings

Plaintiff filed the instant claims for a period of disability, disability

insurance, and supplemental security income benefits on February 13, 2012,

alleging disability beginning January 8, 2011.  (Dkt. 8-2, Pg ID 59).  Plaintiff's

claim was initially disapproved by the Commissioner on June 4, 2012.  *Id*.

Plaintiff requested a hearing and on December 19, 2012 plaintiff appeared, along

with her attorney, before Administrative Law Judge ("ALJ") Kevin J. Detherage,

who considered the case de novo.  (Dkt. 8-2, Pg ID 59-70).  In a decision dated

January 25, 2013, the ALJ found that plaintiff was not disabled.  *Id*.  Plaintiff

requested a review of this decision on March 26, 2013.  (Dkt. 8-2, Pg ID 53-55).

The ALJ's decision became the final decision of the Commissioner when the

Appeals Council on May 7, 2014, denied plaintiff's request for review.  (Dkt. 8-2,

Pg ID 28-31); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir.

2004).

    For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

    Plaintiff was born in 1959 and was 53 years old at the time of the

administrative hearing, and 51 years old the alleged onset date of disability.  (Dkt.

8-2, Pg ID 68).  The ALJ applied the five-step disability analysis to plaintiff's

claim and found at step one that plaintiff had not engaged in substantial gainful

activity since the alleged onset date.  (Dkt. 8-2, Pg ID 61).[1]  At step two, the ALJ

found that plaintiff's irritable bowel syndrome (IBS), chronic obstructive

pulmonary disease (COPD), degenerative disc disease, and depression were

"severe" within the meaning of the second sequential step.  *Id*.  At step three, the

ALJ found no evidence that plaintiff's combination of impairments met or equaled

one of the listings in the regulations.  (Dkt. 8-2, Pg ID 62-63).  The ALJ

determined that plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find
> that the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) except the claimant can occasionally
> stoop, kneel, crouch or crawl. She can never climb
> ladders/ropes/scaffolds and can occasionally climb
> ramps and stairs. She can sit or stand at will provided she
> will not be off task more than 9% of the work period.
> She should avoid concentrated exposure to dust, fumes,
> gases, odors, and poorly ventilated areas.

(Dkt. 8-2, Pg ID 63-64).  At step four, the ALJ concluded that plaintiff could not

perform her past relevant work as a cleaner and chore provider.  (Dkt. 8-2, Pg ID

68).  At step five, the ALJ denied plaintiff benefits because plaintiff could

perform a significant number of jobs available in the national economy.  (Dkt. 8-2,

---

[1]  Plaintiff worked as a chore provider for her elderly mother, with whom she lived in
2011 and 2012, but this work activity did not rise to the level of substantial gainful activity.
(Dkt. 8-2, Pg ID 61).

Pg ID 69).

      B.    <u>Plaintiff's Claims of Error</u>

      According to plaintiff, the ALJ's decision is contrary to the great weight of the evidence of record and not supported by substantial evidence. (Dkt. 13, Pg ID 504-509). Plaintiff argues that the ALJ ignored medical evidence supporting a finding of disability, namely the severity of her COPD, IBS, back pain and depression. *Id.*

      Plaintiff contends that the ALJ denigrated the severity of her COPD by relying on a chest x-ray showing mild hyperaeration changes. (Dkt. 13, Pg ID 508). Plaintiff argues there is no correlation between hyperaeration and the severity of COPD. *Id*. Plaintiff further contends that the ALJ ignored the consulting examiner, Dr. Sankaran's observations that her chest was "emphysematous" and the presence of rhonchi, which suggested more serious COPD. *Id.* Similarly, plaintiff argues that the ALJ discounted the severity of her IBS by relying on findings that plaintiff had no abdominal tenderness, no liver enlargement and normal bowel sounds on examination in November 2011 and ignoring her reports of more than six bowel movements a day and frequent bowel incontinence. (Dkt. 13, Pg ID 506-508). Plaintiff also argues that the ALJ erred in concluding that her back and leg pain were not disabling because Doppler imaging showed no deep vein thrombosis, and because plaintiff did not exhibit

4

abnormal gait and station.  (Dkt. 13, Pg ID 507).  Finally, according to plaintiff, the ALJ erred by presuming that plaintiff's diagnoses of dysthymic disorder and generalized anxiety disorder, along with her Global Assessment of Functioning (GAF) score of 50, were based on her mental status examination from September 2012.  (Dkt. 13, Pg ID 509).  Plaintiff emphasizes that her diagnoses and her GAF score were based not solely on her mental status examination, but on "the totality of the psychological interview."  *Id*.  Moreover, plaintiff notes that her mental status examination revealed agitated motor activity, flat affect and depressed mood, and that her GAF score placed her in the severe category of depression.  *Id*.

Plaintiff also argues that the defendant failed to carry its burden of proof that jobs existed in significant numbers that plaintiff, given her exertional and non-exertional limitations, especially her medically ascertained respiratory, orthopaedic, gastrointestinal and psychological impairments, could perform on a regular and sustained basis, once plaintiff established she was incapable of performing her past relevant work.  Plaintiff, citing *Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987), contends that to satisfy that burden, defendant must find, with the support of substantial evidence, that plaintiff has the vocational qualification to perform specific jobs.  (Dkt. 13, Pg ID 506).  The substantial evidence may come from the testimony of a vocational expert in response to a hypothetical question, but only if the hypothetical question accurately portrays

plaintiff's physical and mental impairments.  Plaintiff argues that the ALJ's hypothetical did not accurately portray plaintiff's physical and mental impairments in that plaintiff could only sit for 30 minutes at a time, walk not more than a half a block, needs to lie down several hours per day and suffers from diarrhea so severe and frequent that she must spend much her day going to the toilet.  *Id.*

Additionally, plaintiff argues that the ALJ failed to provide reasonable, specific reasons for finding plaintiff's testimony less than fully credible, especially in light of the great weight of the medical evidence.  (Dkt. 13, Pg ID 504). Specifically, plaintiff contends that ALJ committed clear and reversible error by applying the discredited "sit and squirm test," noting his observation that plaintiff did not appear to be in obvious pain or discomfort during the hearing and that she lacked the physical appearance of a person experiencing prolonged or severe pain. (Dkt. 13, Pg ID 509).  Plaintiff also disputes the ALJ's finding that plaintiff made inconsistent statements regarding her work history because she reported her last regular job and therefore her onset of disability was in January 2011 despite performing chore provider work, which did not amount to SGA, after that date. *Id*.  Plaintiff contests the ALJ's negative inference from the seven month gap in her medical treatment, arguing that the gap was due to lack of insurance and her inability to pay for treatment and thus, could not be used to undermine the credibility of her testimony regarding the severity of her symptoms.  (Dkt. 13, Pg

6

ID 507).

Finally, plaintiff maintains that the ALJ erred by according little weight to plaintiff's GAF score and great weight to the opinion of the non-examining physician. (Dkt. 13, Pg ID 510). Plaintiff also accuses the ALJ of mischaracterizing sedentary jobs as light duty jobs because a finding that plaintiff could only perform sedentary jobs would entitle plaintiff to benefits due to her age. *Id*. Plaintiff contends that the jobs identified by the VE are not designated as light duty based on the amount of weight to be lifted, but rather by the fact that they require standing and walking that is in direct contravention to the ALJ's imposition of a sit/stand option. (Dkt. 13, Pg ID 512).

    C.    <u>The Commissioner's Motion for Summary Judgment</u>

The Commissioner addresses plaintiff's arguments that the ALJ's decision was against the great weight of the (and thus not supported by substantial) evidence by emphasizing that the ALJ relied on the medical evidence, including the records from hospital visits, treatment notes, radiographs and colonoscopy reports and the opinions of Drs. Sankaran and Blum, in concluding that plaintiff was not disabled by her serious impairments. (Dkt. 14, Pg ID 531).

Defendant notes that plaintiff's medical records reveal that after complaining of shortness of breath, a chest x-ray in September 2011 showed "mild hyperaeration changes suggestive of underlying COPD." (Dkt. 8-7, Pg ID 405;

Dkt. 14, Pg ID 521).  According to defendant, in February 2012, plaintiff presented to the emergency department complaining of chest pain. (Dkt. 14, Pg ID 522).  Plaintiff acknowledged that she had not filled her prescriptions or seen her primary care doctor.  (Dkt. 8-7, Pg ID 365).  An exam revealed minimal wheezing and normal breathing effort.  (Dkt. 8-7, Pg ID 367).  Medication resolved the wheezing and an echocardiogram and chest x-rays showed no abnormalities.  *Id.* In May 2012, Dr. Sankaran opined that plaintiff had COPD that was adequately treated with medication and not helped by plaintiff's continued smoking.  (Dkt. 8-7, Pg ID 410).

Defendant also notes plaintiff sought treatment for diarrhea and abdominal pain in August 2011.  (Dkt. 8-7, Pg ID 297-364).  CT scan and flexible sigmoidoscopy suggested colitis, and medication was prescribed.  *Id*. According to defendant, plaintiff complained of continued diarrhea at a November 2011 follow-up appointment, but was not taking medication.  (Dkt. 8-7, Pg ID 301-302).  Medication was prescribed and a colonoscopy was recommended.  *Id.* A colonoscopy performed in May 2012 revealed small internal hemorrhoids, but was otherwise normal.  (Dkt. 8-7, Pg ID 429).  Plaintiff was diagnosed with IBS and prescribed Imodium AD.  *Id*.

Defendant reports that plaintiff denied back pain and had a normal musculoskeletal exam and Doppler leg study in August 2011.  (Dkt. 8-7, Pg ID

8

308, 364).  Plaintiff denied difficulty walking and had a normal gait in November

2011.  (Dkt. 8-7, Pg ID 301-302).  Examinations in July and September 2012

revealed a stable and guarded gait, normal leg strength and range of motion. (Dkt.

8-7, Pg ID 465-477).  She was prescribed Vicodin for her chronic back pain. *Id.*

In May 2012, Dr. Sankaran noted no musculoskeletal abnormality.  (Dkt. 8-7, Pg

ID 410).

As noted by defendant, a psychoevaluation in September 2012 revealed a

dysthymic mood, agitated motor activity and flat affect.  (Dkt. 8-7, Pg ID 438-

445).  Plaintiff was diagnosed with depression and generalized anxiety disorder

and assigned a GAF of 50.  *Id*.

The Commissioner refutes plaintiff's argument that the ALJ did not

properly evaluate plaintiff's credibility.  First, defendant notes that the ALJ's

credibility determination is entitled to great weight and that one strong indication

of credibility is the consistency, both internally and with the record evidence, of

plaintiff's statements.  Defendant notes the following inconsistencies identified by

the ALJ in his decision:

- Plaintiff sought no treatment from January 2011 to August 2011, suggesting her symptoms were not as bad as alleged. (Dkt. 8-2, Pg ID 64).

- In August 2011, she denied back pain. *Id*.

- Despite allegations of disabling leg pain, her gait was found to

9

be stable, and her leg strength and range of motion was normal. (Dkt. 8-2, Pg ID 64-65).

- Chest x-rays showed no acute abnormalities, mild abnormalities were suggestive of COPD.  (Dkt. 8-2, Pg ID 65).

- Plaintiff stopped using medications for her COPD and IBS.  *Id*.

- In October 2012, plaintiff's breathing was normal.  *Id*.

- Dr. Sankaran found only mild obstructive airway disease.  *Id.*

- In August 2011, plaintiff was diagnosed with mild colitis.  *Id*.

- Plaintiff's doctor revised the diagnosis to IBS after a normal colonoscopy in May 2012.  *Id*.

- A 2012 psychological assessment showed only mild to moderate depression and did not reflect total disability.  (Dkt. 8-2, Pg ID 66).

- The ALJ did not observe any obvious pain or discomfort when plaintiff appeared at the hearing. (Dkt. 8-2, Pg ID 67).

- Plaintiff's activities of daily living are inconsistent with her claims of total disability.  *Id*.

Defendant argues the above litany of inconsistencies provides substantial evidence for the ALJ's credibility finding.  (Dkt. 14, Pg ID 529).

Defendant also counters plaintiff's arguments regarding the negative inference the ALJ made about the gap in plaintiff's treatment.  *Id*.  Contrary to plaintiff's argument that the ALJ failed to consider plaintiff's lack of insurance and funds to pay for medications and treatment in making this negative inference,

10

defendant emphasizes the ALJ's acknowledgment of plaintiff's testimony regarding her lack of insurance and his rejection of her explanation. *Id.* The ALJ concluded that plaintiff's ability to regularly purchase tobacco and alcohol was inconsistent with her averment that she was completely unable to afford her prescriptions. *Id.* (citing *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988)). Defendant argues that plaintiff failed to meet her burden to show she was denied care due lack of money. *Id.* (citing *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005)).

Defendant refutes plaintiff's argument that the ALJ committed reversible error by relying on the discredited "sit and squirm" test. (Dkt. 8-2, Pg ID 529-530) (citing *Martin v. Sec'y of Health & Human Servs.*, 735 F.2d 1008, 1010 (6th Cir. 1984)). Defendant maintains that *Martin* did not hold that an ALJ could not consider his own observations, rather that he could not disallow a claim for pain based ***solely*** on his own observations. (Dkt. 8-2, Pg ID 530). According to defendant, the ALJ may cite personal observation as a reason for denying a claim as long as he cites to some other evidence to support that conclusion. *Id*. (citing *Lucido v. Comm'r of Soc. Sec.*, 109 Fed. App'x 715, 716 (6th Cir. 2004)). Additionally, the Commissioner argues that credibility determinations are subject to a harmless error analysis, so that, even if it were error for the ALJ to have relied upon his own observations at the hearing, other substantial evidence still

11

supported the credibility finding. (Dkt. 14, Pg ID 531). For example, the defendant justifies the ALJ's consideration of plaintiff's non-SGA work as a chore provider as an inconsistency which undermines her credibility, relying on *Miller v. Comm'r of Soc. Sec.*, 2013 WL 1705026, at *2 (6th Cir. Apr. 22, 2013)(the ALJ did not err by considering plaintiff's ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled). Defendant asserts that the ALJ considered plaintiff's part-time work as one of many credibility factors.

The Commissioner also refutes plaintiff's objection to the weight given by the ALJ to the consulting physicians' opinions, and plaintiff's GAF score. (Dkt. 14, Pg ID 535). The Commissioner argues that the ALJ properly assigned great weight to the opinions of consulting examiner, Dr. Sankaran, and non-examining consultant Dr. Blum, the only medical opinions in the record, because they were consistent with the record evidence and that plaintiff does not point to any evidence contradicting the consulting doctors' opinions. *Id*. The Commissioner argues that plaintiff's position that the ALJ should have ignored the medical opinions and assessed plaintiff's limitations on his own violates the rule that ALJs may not play doctor and make their own medical findings. (Dkt. 14, Pg ID 536). Similarly, the Commissioner argues that the ALJ was justified in assigning little weight to plaintiff's GAF score because the Sixth Circuit has ruled that GAF

scores are not particularly helpful. *Id.* (citing *Oliver v. Comm'r of Soc. Sec.*, 415 Fed. App'x 681, 684 (6th Cir. 2001)).

Lastly, defendant maintains the ALJ properly relied on the VE testimony that the listed jobs were appropriate for plaintiff's RFC. (Dkt. 14, Pg ID 538). Although plaintiff now argues that the listed jobs do not allow for a sit/stand option, plaintiff failed to raise this issue at the hearing, and, thus, according to defendant, has waived the argument. (Dkt. 14, Pg ID 539) (citing *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) and *Hare v. Comm'r of Soc. Sec.*, 37 Fed. App'x 773, 776-77 (6th Cir. 2002)). Moreover, plaintiff's argument that the jobs listed by the VE do not provide for a sit/stand option is based upon the job descriptions from the Dictionary of Occupational Titles (DOT), which, as noted by the VE at the hearing, does not address sit/stand options; the Commissioner asserts that the VE appropriately relied upon his professional experience to determine whether jobs that plaintiff could perform could be performed with a sit/stand option and existed in significant numbers. *Id.* (citing *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001)).

C.   Plaintiff's Reply Brief

Plaintiff responds to the Commissioner's arguments by noting excerpts of plaintiff's medical record in conflict with those relied upon by the ALJ and argued by the Commissioner. Specifically, plaintiff emphasizes that plaintiff completed

13

the medication prescribed for her colitis rather than stopped taking medication prescribed to her. (Dkt. 15, Pg ID 542). Plaintiff notes her additional weight loss and that the colonoscopy she underwent had to be discontinued due to interval bradycardia. (Dkt. 15, Pg ID 543; Dkt. 8-7, Pg ID 368). Plaintiff also contrasts defendant's account of plaintiff having "minimal wheezing," in the emergency room, with other notes that her breathing sounds were "very diminished bilaterally," and that she complained of pain in her chest "like a load of bricks..." (Dkt. 15, Pg ID 543; Dkt. 8-7, Pg ID 370). Plaintiff reiterates the contrasting aspects of her treatment record relied on by the ALJ. (Dkt. 15, Pg ID 546-47).

Plaintiff also points out some psychological issues omitted from defendant's summary and the ALJ's decision:

- plaintiff grew up in an adoptive, broken, abusive home;

- plaintiff never met her biological father;

- plaintiff's boyfriend suffers from depression and has problems with alcohol;

- plaintiff got the ages of two of her three children wrong;

- plaintiff's daughter has substance abuse problems;

- plaintiff no longer speaks to her oldest son;

- plaintiff did poorly in school, requiring special education for math and social studies;

- plaintiff assists her verbally abusive mother with household

14

chores;

- plaintiff has no support system;

- plaintiff suffers from depression, anxiety, low self-esteem and feelings of worthlessness, resulting in "frequent crying jags;"

- plaintiff has suffered from suicidal ideation in the past and attempted suicide at age 27;

- plaintiff's ability to concentrate was poor, she was agitated, depressed, demonstrated poor self-concept, a loss of appetite and had only fair judgment and insight; and,

- plaintiff's dysthymic disorder, generalized anxiety disorder and GAF of 50 places her in the "serious impairment" category, meaning she would have serious impairment in social, occupational or school functioning, according to the DSM-IV-TR.

(Dkt. 15, Pg ID 543-44). Plaintiff argues that plaintiff's impairments meet or equal the criterial of Listed Impairment 12.04. (Dkt. 15, Pg ID 544).

Plaintiff also argues that the ALJ erred in disregarding plaintiff's boyfriend's testimony, which corroborates her testimony regarding the extent and severity of her symptoms, and that the Commissioner erroneously cited a case regarding harmless error. (Dkt. 15, Pg ID 544-45). Plaintiff argues, without citing authority, that she need not demonstrate that she was denied required medical treatment due to poverty because that fact is too obvious to require proof. (Dkt. 15, Pg ID 547). Plaintiff argues that the negative Doppler test does nothing to rule out the presence of a herniated disc, impinged or irritated nerve or other organic

15

cause of radiculopathy. *Id.* Finally, plaintiff reiterates her disagreement with the ALJ's reliance on the opinion of non-examining consultant, Dr. Blum, "especially given the fact that in almost every case Dr. Blum and his cohorts find no basis for disability..." (Dkt. 15, Pg ID 548).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

17

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc.*

18

*Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

19

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

> Step Five: Even if the claimant is unable to perform his

> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

      C.    <u>Analysis and Conclusions</u>

          1.    Weighing of Evidence

Plaintiff accuses the ALJ of improperly ignoring evidence supporting a

finding of disability.  It is generally recognized that an ALJ "may not cherry-pick

facts to support a finding of non-disability while ignoring evidence that points to a

disability finding."  *Smith v. Comm'r of Soc. Sec.*, 2013 WL 943874, at *6 (N.D.

Ohio 2013), citing *Goble v. Astrue*, 385 Fed. Appx. 588, 593 (7th Cir. 2010)

(citation omitted).  Yet, "the ALJ does not 'cherry pick' the evidence merely by

resolving some inconsistencies unfavorably to a claimant's position."  *Id.*, quoting

*Solembrino v. Astrue*, 2011 WL 2115872, at *8 (N.D. Ohio 2011).  The

undersigned cannot conduct a *de novo* review of the record evidence, and the

findings of the ALJ are not subject to reversal merely because there exists in the

record substantial evidence to support a different conclusion.  *Buxton v. Halter*,

246 F.3d 762, 772-73 (6th Cir. 2001) (citation omitted); *see also Her v. Comm'r of

Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also

support another conclusion, the decision of the [ALJ] must stand if the evidence

could reasonably support the conclusion reached.") (citation omitted).  This is so

because there is a "zone of choice" within which the Commissioner can act,

without the fear of court interference.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  Thus, it is not uncommon in disability cases for there to be some inconsistencies in the record.  It is the duty of the ALJ to resolve any inconsistencies in the evidence, and the ALJ does not "cherry pick" the evidence merely by resolving some inconsistencies unfavorably to a claimant's position. *See Smith*, 2013 WL 943874, at *6 ("Rather than describing the ALJ's actions as 'cherry-picking,' the Sixth Circuit has explained that it could be more neutrally described as 'weighing the evidence.'"), citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).  In the view of the undersigned, that is precisely what the ALJ did here.  He weighed the evidence and made a determination, supported by substantial evidence, that plaintiff is not disabled.

### 2.    Medical Opinion Evidence

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

> An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating

23

> source") is afforded more weight than that from a source
> who has examined the claimant but does not have an
> ongoing treatment relationship (a "nontreating source").

*Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013) (internal

citations omitted).

An ALJ is required to evaluate every medical opinion of record, and set

forth a valid basis for rejecting any.  20 C.F.R. § 404.1527; *see Shelman v.*

*Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Commissioner may not disregard

opinions of a consulting physician which are favorable to a claimant.  *See Lashley*

*v. Sec'y*, 708 F. 2d 1048, 1054 (6th Cir. 1983).  Moreover, "in weighing medical

evidence, 'ALJs must not succumb to the temptation to play doctor and make their

own independent medical findings.'" *Allen v. Comm'r of Soc. Sec.*, No. 12-15097,

2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013) (citing *Simpson v. Comm'r*

*of Soc. Sec.*, 344 Fed. App'x 181, 194 (6th Cir. 2009)) .  An ALJ may not

substitute his [or her] own medical judgment for that of a treating or examining

doctor where the opinion of that doctor is supported by the medical evidence.  *See*

*Simpson*, 344 Fed. App'x at 194; *see also Bledsoe v. Comm'r of Social Sec.*, 2011

WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her

own medical judgment for that of a treating physician and may not make her own

independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL

1733181, at * 13 (S.D. Ohio 2008) ("[t]he ALJ must not substitute his own

judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."). In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio 2011). This is so even though the final responsibility for the RFC determination is an issue reserved to the Commissioner. *Allen,* 2013 WL 5676254, at *15.

Here, despite plaintiff's disagreement with the outcome, the ALJ properly applied the regulatory standards for evaluating medical source evidence. The ALJ assigned great weight to the findings of both Dr. Sankaran and Dr. Blum, the only medical opinion evidence of record in this case. Dr. Sankaran, who personally examined and evaluated plaintiff, found that she had mild obstructive airway disease that was adequately treated with medication and based this opinion on objective testing and clinical findings. (Dkt. 8-2. Pg ID 68; Dkt. 8-7, Pg ID 408-410). The ALJ agreed with Dr. Blum's opinion that plaintiff could perform light work, finding that it was substantially supported by and largely consistent with the record as a whole. (Dkt. 8-2. Pg ID 68; Dkt. 8-3, Pg ID 146-148). Indeed, absent evidence that the medical opinions were not well-supported by medically accepted clinical techniques and inconsistent with other substantial evidence in the record,

the ALJ was required to accept the medical opinions in evidence. *See Simpson*, 344 Fed. App'x at 194. Plaintiff does not argue, nor does the undersigned's review of the record evidence suggest that Dr. Sankaran's and Dr. Blum's opinions were not well-supported by medically accepted clinical techniques or were inconsistent with other substantial evidence in the record.

Plaintiff argues that the ALJ erred in giving plaintiff's GAF score "little weight," but the Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Kennedy v. Astrue*, 247 Fed. App'x 761, 766 (6th Cir. 2007) (citations omitted). Accordingly, any decision to disregard the GAF score is of little consequence and would not undermine a decision supported by substantial evidence. *See Oliver v. Comm'r of Soc. Sec.*, 2011 WL 924688, at *4 (6th Cir. Mar. 17, 2011) (upholding ALJ's decision not to rely on GAF score of 48 because it was inconsistent with other substantial evidence in the record and noting that "GAF score is not particularly helpful by itself").

### 3. Credibility

Plaintiff argues that the ALJ erred in concluding that her testimony as to the intensity and persistence of her symptoms associated with her impairments was not entirely credible. As the relevant Social Security regulations make clear;

26

however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929. Instead, the Sixth Circuit has repeatedly held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004); *see also Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").

   "It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not

27

required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1529. Consistency between the plaintiff's subjective complaints and the record evidence 'tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

Here, the undersigned agrees with the Commissioner that the ALJ's conclusions regarding plaintiff's claims of disabling limitations are supported by substantial evidence. As the Commissioner points out, the ALJ noted that the objective clinical tests in the record indicated generally minimal to moderate abnormalities. (Dkt. 8-2, Pg ID 66). Specifically, the ALJ found that plaintiff's

low back pain and leg soreness were not the result of deep vein thrombosis, her gait and station were stable or improved with prescription pain remedies and there was no diagnostic imaging findings indicating she had disorders of the spine consistent with spinal stenosis or other disease processes. *Id*. Chest x-ray showed mild hyperaeration changes and an original diagnosis of mild ulcerative colitis was later changed to irritable bowel syndrome after a colonoscopy showed colonic mucosa with no evidence of significant pathological changes. *Id*. The ALJ determined that plaintiff's treatment had been relatively conservative in nature, consisting of prescription and over-the-counter medications, "which have been relatively effective in controlling her symptoms. (Dkt. 8-2, Pg ID 67). *See Wray v. Comm'r of Social Security*, 2014 WL 4410154, at *9 (E.D. Mich. 2014) (ALJ properly considered conservative nature of treatment for allegedly disabling impairments in finding claimant not fully credible).

As permitted by the regulations, the ALJ also considered plaintiff's activities of daily living in assessing the credibility of her subjective complaints. The ALJ considered her self-reported activities of performing household chores, preparing simple meals, shopping for groceries, driving a car, watching television, playing cards, and managing her finances without difficulty. (Dkt. 8-2, Pg ID 67). An ALJ may reasonably view such daily activities as inconsistent with subjective complaints of disabling limitations. 20 C.F.R. § 404.1529(c)(3)(I); *see also*

29

*Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (recognizing that in nearly all cases, an evaluation of a claimant's daily activities is relevant to the evaluation of subjective complaints and ultimately, to the determination of disability); *Heston*, 245 F.3d at 536 (an ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds). Thus, it was appropriate for the ALJ to consider plaintiff's activities of daily living as one factor in assessing her credibility.

Finally, the ALJ properly considered plaintiff's less-than-full compliance with her medical treatment as a factor in discounting her credibility. Plaintiff acknowledged that she had stopped taking medications to manage her COPD (e.g. Atrovent and ProAir) despite their relative effectiveness in treating her symptoms due to financial limitations. A failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, unless a claimant simply has no way to afford or obtain treatment to remedy his condition. *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir.1990); *Gray v. Astrue*, 780 F. Supp. 2d 548, 551 (E.D. Ky. 2011); *see Bloe v. Comm'r of Soc. Sec.*, 2011 WL 1233566, at *8 (E.D. Mich. 2011) report and recommendation adopted, 2011 WL 1188721 (E.D. Mich. 2011) ("The failure to seek treatment for a period of time may be a factor to be considered against a claimant…unless a claimant simply has no way to afford or

obtain treatment to remedy her condition"). If there is evidence that plaintiff could pay for treatment, then the ALJ may consider plaintiff's non-compliance with treatment in the credibility assessment. *See* SSR 96-7p. Here, the ALJ determined that plaintiff's ability to fund on-going nicotine and alcohol habits undermined her assertion that she could not afford her prescription COPD medications. *See Strong v. Soc. Sec. Admin.*, 88 Fed. App'x 841, 846 (6th Cir. 2004) (ALJ's consideration of amount spent on cigarettes relevant where plaintiff asserted inability to pay for medical treatment); *see also*, *Sias v. Sec'y of Health & Human Servs.,* 861 F.2d 475, 480 (6th Cir. 1988) (ALJ determined funds used for tobacco could have been used for medical treatment). Moreover, while the ability to afford treatment is a factor used in determining a claimant's credibility, it is not the only factor to be considered. *McClanahan v. Astrue*, 2009 WL 1684488, *6 (M.D. Tenn., June 16, 2009) (While the ALJ found uninsured plaintiff not credible based in large part on lack of treatment, finding upheld where ALJ expressly considered a variety of other factors in evaluating credibility of the plaintiff.). In this instance, plaintiff's lack of treatment was not a "determinative factor" in assessing plaintiff's credibility, but was properly considered by the ALJ. *See England v. Comm'r of Soc. Sec.*, 2013 WL 1150718, at *4 (E.D. Tenn. March 19, 2013).

4.    VE Testimony

In order for a vocational expert's testimony in response

> to a hypothetical question to serve as substantial
> evidence in support of the conclusion that a claimant can
> perform other work, the question must accurately portray
> a claimant's physical and mental impairments.

*Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). The rule that a hypothetical question must accurately portray all of claimant's physical and mental limitations does not divest the ALJ of her obligation to assess credibility and determine the facts. *Griffeth v. Comm'r of Soc. Sec.,* 217 Fed. App'x 425, 429 (6th Cir. 2007) (citing *Redfield v. Comm'r of Soc. Sec*., 366 F.Supp.2d 489, 497 (E.D. Mich. 2005)). In fashioning a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that she accepts as credible. *Id.* (citing *Casey v. Sec'y of HHS,* 987 F.2d 1230, 1235 (6th Cir. 1993)). An ALJ is not required to accept a claimant's subjective complaints, and can present a hypothetical to the VE on the basis of her own reasonable assessment of the testimony and other evidence. *Id*. (citing *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003)).

In the view of the undersigned, the ALJ's RFC assessment and the related hypothetical posed to the VE accurately portray plaintiff's mental and physical impairments and thus provide substantial evidence to support the ALJ's non-disability finding. Plaintiff's assertions to the contrary (that the hypothetical was deficient because it did not encompass plaintiff's inability to sit for more than 30 minutes, walk for more than half a block and need to lay down for several hours

32

per day) are not supported by the medical evidence of record, nor credible lay

testimony.  Additionally, the undersigned agrees with defendant that plaintiff has

waived any argument she may have had that the jobs identified by the VE do not

actually include a sit/stand option by failing to raise this issue at the hearing.  *See*

*Hare*, 37 Fed. App'x at 777.[2]

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

---

[2] In her reply brief, plaintiff, for the first time, asserts that her depression meets or equals
Listed Impairment 12.04.  Plaintiff does not cite to any evidence of record demonstrating that she
reasonably meets the requirements of listing 12.04.  *Cf. McPherson v. Kelsey*, 125 F.3d 989, 995-
996 (6th Cir. 1997)(Issues adverted to in a perfunctory manner, unaccompanied by some effort at
developed argumentation, are deemed waived. It is not sufficient for a party to mention a
possible argument in the most skeletal way, leaving the court to put flesh on its bones).
Accordingly, plaintiff's argument is without merit.

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 6, 2015                s/Michael Hluchaniuk
                                     Michael Hluchaniuk
                                     United States Magistrate Judge

34

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 6, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<p style="margin-left: 40%;">
<u>s/Tammy Hallwood</u><br>
Tammy Hallwood, Case Manager<br>
(810) 341-7887<br>
tammy_hallwood@mied.uscourts.gov
</p>